# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

ANDREW WALKER,                                                                            PLAINTIFF
ADC #118512

v.                                      5:16CV00206-JLH-JTK

KIRK, et al.                                                                             DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

      1.      Why the record made before the Magistrate Judge is inadequate.

      2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

      3.      The detail of any testimony desired to be introduced at the hearing before the

District judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I.  Introduction

Plaintiff Andrew Walker is a state inmate incarcerated at the Cummins Unit of the Arkansas Department of Correction (ADC). He filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs. (Doc. No. 1)[1] Defendants Arkansas Department of Corrections, Cromwell,[2] and Kelley were dismissed on September 15, 2016 (Doc. No. 13), and Defendants Correct Care Solutions and Floss were dismissed on May 17, 2017 (Doc. No. 85).

Pending before the Court is the Motion for Summary Judgment, Brief in Support and

---

[1] On March 24, 2017, and April 24, 2017, attorneys Thomas Nichols, Debra Poulin, and Sharon Cowell, of Disability Rights Arkansas, Inc., entered their appearances as attorneys for Plaintiff. Attorney Cowell was relieved of her representation on August 9, 2017 (Doc. No. 87). On October 30, 2017, Plaintiff moved to dismiss his Counsel, and attorneys Nichols and Poulin filed a motion to withdraw as counsel for Plaintiff on November 1, 2017 (Doc. Nos. 92, 93). The Court granted the Motions on November 3, 2017 (Doc. No. 94), and later denied Plaintiff's Motions to appoint counsel and a medical expert, by Order dated November 15, 2017 (Doc. No. 98).

[2] Plaintiff later identified this Defendant as Dr. Crowell (Doc. No. 72, p. 4).

Statement of Facts filed by remaining Defendants Bazzel, Kirk and Hubbard (Doc. Nos. 89-91). Plaintiff filed a Response and Statement of Facts in opposition to the Motion (Doc. Nos. 99-100).

## II. Amended Complaint

Following the dismissal of Defendants Arkansas Department of Correction, Kelley, and Crowell, Plaintiff amended his Complaint to allege inadequate medical care and treatment by Defendants Correct Care Solutions, Kirk, Hubbard, Bazzel, and Floss (Doc. No. 43). According to this Complaint, Plaintiff re-injured his back in a slip and fall incident shortly following a first back surgery. (Doc. No. 43-1, p. 5) Although he was scheduled to see Dr. Crowell for a follow-up appointment prior to his transfer to the Delta Unit, Defendants failed to respond reasonably to his complaints of pain and refused to refer him back to Dr. Crowell in a timely manner. (Id.) Specifically, Hubbard failed to mention all his symptoms of pain in the consultation order, so that Dr. Crowell could not evaluate him for neck pain and stiffness. (Id., p. 6) Due to monetary concerns, Hubbard also failed to ensure that he receive timely and adequate treatment from Dr. Crowell. (Id., p. 7) Plaintiff further alleged that Defendant Kirk knew that his course of treatment was ineffective, yet failed to provide access to see Dr. Crowell. (Id., p. 8) Finally, Defendant Bazzel also knew of the ineffective course of treatment, yet disregarded prior doctor's orders and implemented an alternative ineffective treatment plan. (Id., p. 9) These Defendants delayed his treatment by Dr. Crowell until November 2014. (Id., p. 6)

## III. Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears

3

the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

    **A.**    **Defendant's Motion**

Defendants ask the Court to dismiss Plaintiff's complaint against them based on his failure to show that they acted with deliberate indifference to his serious medical needs. In addition, they state Plaintiff's allegations amount to a disagreement over the type of medical treatment he received, which does not support a claim, citing Dulaney, 132 F.3d at 1239. In addition to Plaintiff's medical records, Defendants present the depositions of Plaintiff and Dr. Crowell, and an affidavit of an orthopedic surgeon, Dr. Earl Peeples. Based on this evidence, Defendants state Plaintiff cannot show that any delay in surgery adversely affected his prognosis.

    **1.**    **Medical Records**

According to Plaintiff's medical records, Dr. Crowell performed a decompression (laminectomy) surgery on Plaintiff on November 18, 2013, while Plaintiff was incarcerated at the Wrightsville Unit. (Doc. No. 90-1, pp. 7-10). Plaintiff slipped and fell on ice on December 8,

2013, and was examined by the medical staff at the Unit. (Id., pp. 28-31, 33). According to the medical notes, Plaintiff experienced pain to his lower back and back of his head, and presented good range of motion, coordination, and ambulated to the infirmary without any problems. (Id., p. 30) Later, an in-house orthopedic surgeon, Dr. Charles Schock, evaluated Plaintiff, and reported that Plaintiff experienced mild tenderness over the entire low back and hip due to a contusion. (Id., p. 32) On January 31, 2014, an MRI of Plaintiff's back showed no dominant disc protrusion or herniations, but a suspected posterior annular tear along with mild to moderate hypertrophy. (Id., pp. 32, 40-41) Plaintiff saw Dr. Crowell on February 26, 2014, who found that surgery was not indicated at the time and recommended an egg crate mattress and a follow-up appointment in three months. (Id., p. 15).

On May 13, 2014, Plaintiff transferred to the Delta Unit. (Id., p. 80). On the same date, Defendant Advanced Practice Nurse (APN) Hubbard requested an outside consultation for Plaintiff with Dr. Crowell. (Id., p. 81-82) According to this notation, Plaintiff suffered from diabetes and had been prescribed Gabapentin, Ibuprofen, Lisinopril, Nortriptyline, and Metformin. (Id.) Plaintiff also received an extra mat on May 13, 2017 (Id., p. 87). Hubbard treated him on May 21, 2014, noted the pending consult with Crowell, prescribed a special diet for Plaintiff, and placed him on physical restrictions. (Id., pp. 87-88) Hubbard again saw him on June 24, 2014, for complaints of left hip pain and headaches, and prescribed Tizanidine and ordered lab tests. (Id., p. 96) Plaintiff submitted a sick call request on July 10, 2014 for lower back hip pain, but refused treatment the next day. (Id., pp. 101, 103) On July 30, 2014, his prescriptions were renewed and he reported that he had not yet seen Dr. Crowell. (Id. at 103) Hubbard re-ordered his prescriptions on August 6, 2014, and noted that he was able to perform activities of daily living and presented

no difficulty walking into and out of the exam room or sitting and rising from the chair. (Id., pp. 106-111)

On August 26, 2014, Dr. Bazzel, the Chief Medical Officer for Correct Care Solutions at the time, ordered that Plaintiff first be examined by an in-house physician for his follow-up, based on clinical findings. (Id., p. 83) Hubbard saw him on September 24, 2014 for a chronic care exam, and ordered x-rays of his left hip and lab tests. (Id., pp. 114-116) Plaintiff submitted a request for refills of his medications on October 9, 2014, and was referred to a provider on October 13, 2014 (Id., pp. 122, 123). Hubbard conducted a follow-up exam on October 14, 2014, and renewed his medications. (Doc. No. 90-2, p. 2) She also resubmitted a request for consult on October 21, 2014. (Id., pp. 5-9) Plaintiff submitted a sick call request for renewal of muscle relaxers and complained of left leg pain on October 30, 2014. (Id., p. 12) Medications were prescribed on November 3, 2014 (Id., p. 13).

On November 5, 2014, Plaintiff saw Dr. Crowell, who discussed the risks associated with a fusion surgery. (Id., pp. 14-22). Hubbard submitted a consult request for fusion surgery on that same date. (Id., p. 22) Following x-rays and other tests, Plaintiff underwent fusion surgery on December 10, 2014. (Id., pp. 42-48). He continued to complain of pain after the surgery and continued to receive prescription pain medications. (Id., pp. 76-111) On April 6, 2015, he submitted a request to see Dr. Crowell, and staff instructed him to continue with his medications and become more physically active in the barracks. (Id., p. 111) When he again complained of pain on April 28, 2015 his medications were continued, he was encouraged to become more physically active, and told that a consultation to an orthopedic physician was not medically-indicated. (Id., p. 119)

**2.    Depositions**

Plaintiff testified that when Dr. Schock examined him in January, 2014, following his fall, he told Plaintiff he had a deep tissue bruise. (Doc. No. 90-3, p. 48)    Plaintiff also claimed that when Crowell re-examined him in February 2014, he diagnosed him with stenosis of the lumbar spine and contusion of the left buttock and recommended surgery. (Id., pp. 53-55)    He later stated Crowell told him to return if he continued to suffer pain. (Id., p. 57)    Although he acknowledged that Hubbard submitted a consult request in May 2014, he stated she should have submitted a treatment plan which ensured that he was taken to Dr. Crowell sooner. (Id., p. 64, 73) He admitted that Hubbard made sure he had an extra mat, and also that he never lacked pain medications or was required to work while at the Delta Unit. (Id., pp. 73, 78)    He claimed he talked on several occasions about his problems to Defendant Kirk, the Health and Safety Administrator, who always told him the consult was pending. (Id., p. 81)    He also claimed Defendant Bazzell acted inappropriately by submitting an alternative treatment plan, which further delayed his appointment with Dr. Crowell. (Id., p. 101) Plaintiff admitted that he continued to suffer pain after the second surgery and that he still needs additional pain medications and a back brace. (Id., pp. 116, 125-6). Although he stated that he had no proof, he believed his surgery was delayed because of costs. (Id., p. 127)

Dr. Crowell testified that when he examined Plaintiff in February 2014 following his fall, he recommended that Plaintiff return for a follow-up examination in three months. (Doc. No. 90-4, p. 12)    At that time, Plaintiff complained about back and left leg pain, and although the January MRI revealed a tear, Dr. Crowell did not remember if he reviewed the MRI at that time. (Id., p. 13-14). However, he stated he would not have recommended surgery at that point because it was

too soon after Plaintiff's November 2013 surgery. (Id., p. 15). He did note that Plaintiff's strength was fine, and that he noted no sensory deficits, or symptoms caused by irritation of the nerve roots. (Id., p. 40)  He also stated that the type of delay Plaintiff experienced was common with Correct Care Solutions and that it was not an excessive delay. (Id., pp 17, 34, 53)  With respect to the second surgery, he stated that a long healing process is associated with a lumbar fusion and that the outcomes are not always black and white. (Id., p. 37)  He was not surprised by Plaintiff's continued pain after the fusion surgery. (Id., p. 51) Finally, he stated that an extra mattress and pain medications prior to the second surgery would have been sufficient because Plaintiff's condition was not considered a medical emergency or an urgent case. (Id., pp. 32, 41)

### 3.   Expert affidavit and report

Dr. Earl Peeples, an orthopedic surgeon, reviewed Plaintiff's medical records in light of his allegations against the Defendants, and concluded that Defendants provided Plaintiff with appropriate medical care to a reasonable degree of medical certainty.   (Doc. No. 90-5, p. 1) In his report, he noted that while the January 2014 MRI showed an annular tear (component of degenerative disc disease), the MRI did not contain any description of traumatic anatomy. (Id., p. 7)  Dr. Peeples stated, "it is hard to argue that an injury has occurred when no traumatic anatomic is described and when the previous severe spinal canal stenosis have been improved by appropriate surgery." (Id.)  He also believed that when Dr. Crowell saw Plaintiff in February 2014, no further care was indicated for Plaintiff's lumbar spine. (Id.) Peeples stated that after that time, Plaintiff's pain complaints alone drove his care, absent identification of spinal instability. (Id., p. 10)  He also believed that Plaintiff's November 2014 surgery was not medically-necessary, as evidenced by its lack of success. (Id., pp. 10-11).  He found no facts to support Plaintiff's claim that

8

Defendants' delay caused him harm, and concluded, "the surgery performed in 2013 by Dr. Crowell was appropriate, successful and produced improvement of the L4-5 spinal canal stenosis as noted on the February, 2014 MRI. No objective evidence of traumatic anatomy due to the December, 2013 fall is objectively identified anywhere in the records.   Complaints of pain are symptoms and symptoms do no harm.   The treatment of symptoms by observation in the absence of physical findings is not cruel and unusual punishment medically." (Id., p. 16).

### B. Plaintiff's Response

Plaintiff disagrees with Defendants and maintains that he should have been seen by Dr. Crowell in June, and that the delay reduced the likelihood of a favorable outcome.   He claims that from May 13, 2014 until December 12, 2014 (his second surgery), he was denied the minimal civilized measure of life's necessities and deprived of adequate care in a timely manner. Defendant Hubbard also failed to list all his complications on the referral order, which resulted in a lack of treatment of all his medical problems.   He also claims the delay was caused by cost concerns, which further evidences deliberate indifference.

### C. Analysis

In order to support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendants acted with deliberate indifference to a serious medical need.   Farmer v. Brennan, 511 U.S. 825, 834 (1994).   However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference.   Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).   Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995).   See also Smith v.

9

Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds). Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, 132 F.3d at 1240.

As a matter of law, this Court finds no evidence of deliberate indifference on the part of any of the Defendants. It is clear that Plaintiff was constantly treated for a back condition which began in 2006-07 after he suffered a fall at the Calico Rock Unit. (Doc. No. 90-3, p. 25) He underwent surgery in November 2013, was treated by several medical professionals following his fall in December 2013, underwent a MRI and other tests, and was examined by Dr. Crowell in February 2014. At that point, there is no mention in Plaintiff's medical records or in Dr. Crowell's deposition, that Plaintiff was a candidate for another surgery. He admitted that he sued Defendants for the limited period between May 13, 2014 and his appointment with Dr. Crowell on November 5, 2014. (Id., p. 67) He also admitted Defendant Hubbard immediately submitted a consult request upon his arrival at the Unit in May 2014, and that there never was a time during

that period that he lacked pain medications. (Id., pp. 60, 78) There is no indication in the medical records that any of the Defendants denied Plaintiff medical treatment and care during the relevant time period. The involvement in Plaintiff's care of Defendants Bazzel and Kirk is limited to Kirk's communications to Plaintiff about his consult and Bazzel's medical decision for an in-house examination prior to approving an outside consult. These were not reckless actions disregarding Plaintiff's health and well-being. Rather, they were medical decisions with which Plaintiff disagrees, which is insufficient to support a constitutional claim for relief. Smith, 910 F.2d at 502. Plaintiff provides absolutely no evidence that the delay in his appointment with Dr. Crowell adversely affected his health, and he admitted that he continues to deal with pain. In addition, Defendants' expert, Dr. Peeples, disagreed with the need for the second fusion surgery, absent objective findings of "clear anatomic indication…when surgery was predictably unlikely to resolve the spine pain complaints." (Doc. No. 90-5, p. 11)

Therefore, given the evidence presented by Defendants and the lack of any evidence supporting causation, the Court finds as a matter of law that Defendants did not act with deliberate indifference in delaying his consult, and that the delay did not cause a detriment to Plaintiff's health. "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, 132 F.3d at 1240.

**IV.   Conclusion**

IT IS, THEREFORE, RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. No. 89) be GRANTED, and that Plaintiff's complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 21st day of December, 2017.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE

12